UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re

Strathmore Group, LLC

        Debtor.

----------------------------------------------------------x
In re

Nikolaos Hiletzaris,

        Debtor.

----------------------------------------------------------x

Case No. 1-13-45669-nhl

Chapter 11

Case No. 1-13-46187-nhl

Chapter 11

## DECISION DENYING MOTIONS FOR ABSTENTION

APPEARANCES:

STAGG, TERENZI, CONFUSIONE WABNIK LLP
Ronald M. Terenzi, Esq.
Michael Kwiatkowski, Esq.
401 Franklin Avenue, Suite 300
Garden City, NY 11530

*Attorneys for Kathy Liosis as Administrator of the
Estate of Ioannis Hilitzaris a/k/a John Hiletzaris*

O'KELLY ERNST & BIELLI LLC
Thomas Bielli, Esq.
901 N Market St
Suite 1000
Wilmington, DE 19801

*and*

O'KELLY ERNST & BIELLI LLC
Shannon J. Dougherty, Esq.
David M. Klauder, Esq.
901 N Market St
Suite 1000
Wilmington, DE 19801

*Attorneys for Nikolaos Hiletzaris*

CIRADI CIRADI & ASTIN
Albert A. Ciardi, III, Esq.
Jennifer Cranston, Esq.
Once Commerce Square, Suite 1930
2005 Market Street
Suite 3500
Philadelphia, PA 19103

*and*

WATCHEL & MISSRY, LLP
Steven J. Cohen, Esq.
885 Second Avenue
47th Floor
New York, NY 10017

*Attorneys for Strathmore*

KRISS & FEUERSTEIN LLP
Jarold C. Feuerstein, Esq.
Jason S. Liebowitz, Esq.
360 Lexington Avenue, Suite 1200
New York, New York 10017

*Attorneys for SDF30 Woodzone, LLP*

HONORABLE NANCY HERSHEY LORD
UNITED STATES BANKRUPTCY JUDGE

Strathmore Group, LLC ("Strathmore") filed a voluntary petition under chapter 11 of the Bankruptcy Code on September 18, 2013.  Strathmore's schedules of assets and liabilities list a fee simple interest in an apartment building located at 37-06 69th Street, Woodside, New York (the "Building").  Kathy Liosis ("Liosis"), as administrator of the estate of Ioannis Hiletzaris a/k/a John Hiletzaris ("John"), challenges Strathmore's ownership of the Building.

Before the Court is Liosis' motion (the "Motion for Abstention"), filed in the Strathmore case and the related individual chapter 11 bankruptcy of Strathmore's principal, Nikolaos Hiletzaris ("Nikolaos").  Liosis requests that this Court abstain from hearing any matters in these bankruptcy cases connected to proceedings pending in Queens County Surrogate's Court (the "Surrogate's Court").  Because the determination of core bankruptcy issues require this Court to consider questions yet unresolved in Surrogate's Court, such as whether the Building was properly transferred to Strathmore, the Motion for Abstention is denied.

## Background

Nikolaos and his brother John inherited multiple properties when their father Christos Hiletzaris ("Christos") died intestate in 1998. Mot. 4 ¶¶ 6, 8, ECF No. 155.[1]  One of those assets, the Building, was purportedly transferred to Strathmore shortly after its formation in April 1999. Mot. 4–5 ¶¶ 10–11, ECF No. 155.  According to Strathmore's Operating Agreement, signed by Nikolaos in his individual capacity and as Attorney in Fact to John, Nikolaos and John initially held 51% and 49% of the shares, respectively. Mot. Ex. C 4, 18, ECF No. 155-3.  By May 1999,

---

[1] Unless otherwise indicated, citations to "ECF" refer to the docket in Case No. 13-45669, *In re Strathmore Group, LLC*.

John was no longer an owner of Strathmore, his interest allegedly having been transferred to Nikolaos and Nikolaos' wife. Mot. 5 ¶ 12, ECF No. 155. The schedules to Nikolaos' bankruptcy petition list his interest in Strathmore as having a value of $2,810,933.81. Sched. B 1, ECF No. 13-46187 Doc. 20.

Liosis alleges that Nikolaos improperly diverted assets of Christos' estate, including the Building and its rents. Mot. 6 ¶¶ 14–16, ECF No. 155. Appointed administrator of John's estate when he died in 2004, Liosis commenced a proceeding in Surrogate's Court in 2008 to compel an accounting from Nikolaos, the administrator of Christos' estate. Subsequently, Liosis filed a turnover action in Surrogate's Court seeking, *inter alia*, a determination that John's estate is the 50% owner of the Building.[2] Mot. 7 ¶ 19, ECF No. 155.

Liosis contends that, among other improprieties, Nikolaos repeatedly refinanced the Building and retained the proceeds for his own benefit. Mot. 5 ¶ 11, ECF No. 155. Most recently, in 2009, Strathmore obtained a loan in the amount of $3,400,000, which, according to Nikolaos, Strathmore, and alleged mortgagee SDF30 Woodzone LLC ("SDF"), was secured by a mortgage on the Building. SDF Opp'n 6–7 ¶ 21, ECF No. 170. In 2012, Strathmore defaulted on the loan, and SDF commenced a foreclosure proceeding, which the bankruptcy filings stayed. Mot. 8 ¶ 22, ECF No. 155. Liosis challenges the validity of SDF's mortgage. Mot. 10–11 ¶ 31, ECF No. 155. She maintains that the Building cannot serve as collateral for SDF's loan, because the transfer of the Building to Strathmore was unauthorized.

On May 7, 2014, this Court entered an Order approving the sale of the Building, free and clear of liens, claims, and encumbrances (the "Sale Order"). Strathmore sought authority to

---

[2] On May 21, 2014, this Court denied, without prejudice, Liosis' motion for relief from the automatic stay with respect to the pre-petition proceedings pending in Surrogate's Court, Estate of Christos Hiletzaris, File No. 1999/408, and Estate of Ioannis Hiletzaris, File No. 2008/850B.

satisfy SDF's secured claim at closing, but the Court directed that the proceeds be held in escrow pending further order of this Court.[3] Debtor Mot., ECF No. 123; Sale Order 16 ¶ 33, ECF No. 143.  Thus, Strathmore commenced an adversary proceeding, pursuant to 11 U.S.C. § 506 and Federal Rule of Bankruptcy Procedure 7001(2), for a determination of the validity, extent, and priority of SDF's lien and a declaratory judgment that Liosis has no interest in the sale proceeds. Compl., ECF No. 14-01078 Doc. 1.  Nikolaos also filed a complaint against Liosis, pursuant to 11 U.S.C. § 502 and Federal Rule of Bankruptcy Procedure 7001(2) and (9), for a declaration that she has no valid claim against Nikolaos or his estate. Compl., ECF No. 14-01079 Doc. 1.

    After Liosis moved for abstention, but before the matter was marked submitted, she filed a $9,940,000 proof of claim in each bankruptcy case.[4]  The proofs of claim, which include an asserted one-half interest in the $10,400,000 proceeds from the sale of the Building, are based on John's rights as Christos' heir.  Liosis believes that the Surrogate's Court is the proper forum to determine the parties' interest in the Building, and this Court should abstain from hearing any matters related to the Surrogate's Court proceedings.  This Court disagrees.  The bankruptcy court is the proper forum to decide whether Strathmore rightfully characterizes the Building as property of its bankruptcy estate; the validity, priority, and extent of liens encumbering the Building; and Liosis' claims against both debtors.

---

[3] SDF filed a secured proof of claim against Strathmore in the amount of $4,032,993.58, on December 9, 2013. Claim No. 4, ECF No. 13-45669.  On August 28, 2014, SDF filed a secured proof of claim against Nikolaos, in the amount of $4,104,942.94. Claim No. 11, ECF No. 13-46187.

[4] On August 4, 2014, Liosis filed a secured proof of claim against Strathmore in the amount of $5,200,000, with the remainder being unsecured debt. Claim No. 9, ECF No. 13-45669.  Liosis filed an unsecured proof of claim against Nikolaos on August 22, 2014. Claim No. 10, ECF No. 13-46187.

<u>Discussion</u>

A. Jurisdiction

    1.  28 U.S.C. § 157(b)

28 U.S.C § 1334(b) provides, in pertinent part, that the district courts have "jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Section 157(a) states that "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C § 157(a).  The bankruptcy courts in this district have jurisdiction pursuant to § 1334(b) and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012.  This jurisdiction encompasses "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a)." 28 U.S.C. § 157(b)(1).  The statute does not define "core proceedings," but lists non-exclusive examples, including "matters concerning the administration of the estate;" "allowance or disallowance of claims against the estate;" "determinations of the validity, extent, or priority of liens;" and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship." 28 U.S.C § 157(b)(2)(A), (B), (K), (O).

"[M]atters requiring a declaration of whether certain property comes within § 541's definition of 'property of the estate' are core proceedings." *Schroeder v. New Century Holdings, Inc. (In re New Century Holdings, Inc.)*, 397 B.R. 95, 105 (Bankr. D. Del. 2008); *accord McCord v. Borko (In re Borko)*, No. 12-1268 (NHL), 2013 WL 5442264, at *6 (Bankr. E.D.N.Y. Sept. 29, 2013) ("Determining the scope of property falling within the bankruptcy estate is an essential part of administering the estate."); *Koken v. Reliance Grp. Holdings, Inc. (In re Reliance Grp. Holdings, Inc.)*, 273 B.R. 374, 394 (Bank. E.D. Pa. 2002).  Furthermore, "the

bankruptcy court has core jurisdiction to adjudicate all of those interests" professed by a debtor and its creditors in averred property of the estate. *All Am. Laundry Serv. v. Ascher (In re Ascher)*, 128 B.R. 639, 643 (Bankr. N.D. Ill. 1991).  When an order authorizes the sale of assets "subject to the prioritization of . . . liens," an adversary proceeding, "the mechanism by which the bankruptcy court enforce[s] those" liens, is "unique to the bankruptcy and directly affect[s] a core bankruptcy function." *Universal Oil Ltd v. Allfirst Bank (In re Millennium Seacarriers, Inc.)*, 419 F.3d 83, 97 (2d Cir. 2005).  Likewise, an "adversary proceeding, which involves the determination of an objection to a proof of claim filed in the bankruptcy case, constitute[s] a core proceeding within the meaning of 28 U.S.C. § 157." *Gulf States Exploration Co. v. Manville Forest Prod. Corp. (In re Manville Forest Prod. Corp.)*, 896 F.2d 1384, 1394 (2d Cir. 1990).  A party who files a proof of claim "submit[s] itself to the equitable power of the bankruptcy court to disallow its claim." *Manville Forest Prod. Corp.*, 896 F.2d at 1389.

Liosis acknowledges that the Surrogate's Court's ruling "will have an effect on the bankruptcy estate by dictating what would be available for creditors," but argues that that this Court's jurisdiction is non-core because the matters before the Surrogate's Court are state law causes of action and do not arise in or under title 11. Mot. 12–13 ¶¶ 35, 39. ECF No. 155. However, "[t]hat [a] dispute may involve the application of New York state law does not undermine the core finding." *Point Blank Solutions, Inc. v. Robbins Geller Rudman & Dowd LLP (In re Point Blank Solutions)*, 449 B.R. 446, 449 (Bankr. D. Del. 2011).  State law defines property rights, but bankruptcy law determines whether the Building is property of the Strathmore estate. *See Koken*, 273 B.R. at 395; *Ascher*, 128 B.R. at 643–44.  Although a "state-law right underlying [a] claim could be enforced in a state court proceeding absent the bankruptcy," an action to disallow "a claim filed against the estate is a core proceeding because

it could arise only in the context of bankruptcy." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97

(5th Cir. 1987); *In re Salander O'Reilly Galleries*, 453 B.R. 106, 121 (Bankr. S.D.N.Y. 2011)

("Allowance of claims and order of priorities of interests may be fundamentally concerned with

state law, and they are expressly denominated as core proceedings, over which the [bankruptcy]

[c]ourt has original jurisdiction.").

> Liosis bases her proofs of claim on:

> wrongful conduct engaged in by Nikolaos as the appointed administrator of Christos' estate . . . wrongful transfers of interest in the [Building], including refinancing of the [Building] and cashing out equity from the [Building] as well as improper transfer of the [Building] to [Strathmore] and subsequent transfer of interest in [Strathmore] itself.

Addendum Claim No. 10, ECF No. 13-46187.  In support of her claims, Liosis attached her

objection filed in Surrogate's Court to Nikolaos' accounting.  If Liosis' allegations prove true,

then the transfer of the Building to the Debtor might be invalid, placing all subsequent

transactions in question.  Consequently, the Sale Order provided that:

> this Court shall retain jurisdiction to . . . decide any disputes concerning this Order . . . including, but not limited to . . . the status, nature and extent of the [Building] and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the [Building] free and clear of all liens, claims, encumbrances, and/or interests . . . adjudicate any and all disputes concerning alleged pre-Closing liens, claims, encumbrances, and/or interests in and to the [Building] . . . adjudicate any and all disputes relating to the Debtor's rights, title, or interest in the [Building] and the proceeds thereof.

Sale Order 15–16 ¶ 24(b), (d), (e), ECF No. 143.

This Court has core jurisdiction to consider the state law issues in the Surrogate's Court

proceedings, because their resolution will form the basis of this Court's determination, under

bankruptcy law, whether the Building is property of a bankruptcy estate and whether Liosis has

an allowed proof of claim against Strathmore, Nikolaos, or both.  Furthermore, to adjudicate the

validity, priority, and extent of SDF's lien on the Building, a statutorily enumerated core

proceeding, this Court must examine Nikolaos' actions as Strathmore's principal, administrator of Christos' estate, and attorney-in-fact to John, roles defined by state law. Accordingly, this Court's core jurisdiction includes the authority to hear and decide whether the Building is property of Strathmore's bankruptcy estate, pursuant to § 541; the allowance of claims, pursuant to § 502; and the validity, priority, and extent of liens, pursuant to § 506.

      2.  *Stern v. Marshall*

Even if granted core jurisdiction under § 157(b), a bankruptcy court may still lack the constitutional authority to enter final judgment. This Court concludes that *Stern v. Marshall*, 131 S. Ct. 2594 (2011), does not limit its constitutional authority to enter final judgments in the instant core proceedings.

The debtor in *Stern* invoked the bankruptcy court's jurisdiction over a counterclaim for tortious interference, "a 'core proceeding' under the plain text of § 157(b)(2)(C)." *Stern*, 131 S. Ct. at 2604. The Supreme Court held that, as a non-Article III court, "[t]he Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Stern*, 131 S. Ct. at 2620. The majority "agree[d] with the United States that the question presented [was] a 'narrow one'" and "conclude[d] [ ] that Congress, in one isolated respect, exceeded [Article III's] limitation in the Bankruptcy Act of 1984." *Id*.

In the wake of *Stern*, courts grapple with the decision's application to other core proceedings. Some courts urge a narrow reading. *E.g.*, *In re Global Aviation Holdings, Inc.*, 496 B.R. 284, 287 (E.D.N.Y. 2013) ("While *Stern* indeed limits the universe of cases properly finalized by the bankruptcy courts, the Supreme Court emphasized that its holding was a 'narrow' one that did not 'meaningfully change the division of labor' between bankruptcy courts

and district courts."); *Silverman v. A–Z RX LLC (In re Allou Distributors Inc.)*, 04-08369 (ESS),

2012 WL 6012149, at *11 (Bankr. E.D.N.Y. Dec. 3, 2012) ("[T]he Supreme Court expressly

indicated that the decision is limited in its scope to a narrow set of circumstances."); *Salander*

*O'Reilly Galleries*, 453 B.R. at 115 ("*Stern* is replete with language emphasizing that the ruling

should be limited to the unique circumstances of that case.").  This circuit has reiterated *Stern*'s

admonition regarding the narrowness of its holding. *Pfizer Inc. v. Law Offices of Peter G.*

*Angelos (In re Quigley Co., Inc.)*, 676 F.3d 45, 52 (2d Cir. 2012) ("[W]e conclude that *Stern* has

no application to the present case.") (citing *Stern*, 131 S. Ct. at 2620; *Salander O'Reilly*

*Galleries*, 453 B.R at 115).

       In *Pryor v. Tromba*, No. 13-CV-676 (JFB), 2014 WL 1355623, at *3 (E.D.N.Y. Apr. 7,

2014), the court adopted a broader application of *Stern* to a trustee's lawsuit against a non-debtor

to avoid and recover an alleged fraudulent conveyance and preference, core proceedings under

§ 128(b)(2)(F) and (H).  The defendant moved the district court to withdraw the reference to the

bankruptcy court, made pursuant to § 157(a) and the Eastern District of New York standing

order.  In analyzing "cause" for withdrawal, the district court considered "whether the

bankruptcy court has the authority to finally adjudicate the matter." *Id.*  The district court

interpreted *Stern* to mean that "a bankruptcy court may enter final judgment only (1) if the claim

involves a public right; (2) the process of adjudicating the creditor's proof of claim would

resolve a counterclaim; or (3) the parties consent to final adjudication by the bankruptcy court."

*Id.*  Because none of these "exceptions in *Stern*" applied, the district court decided that the

"Bankruptcy Court lacke[d] constitutional authority to enter a final judgment on the fraudulent

conveyance and preference claims." [5] *Pryor*, 2014 WL 1355623, at *5.

The instant facts differ from both *Stern* and *Pryor*.  Here, neither a trustee nor the debtors-in-possession are attempting to recover assets from Liosis by pursing preference and fraudulent transfer actions or other common law claims.  While Liosis disputes Strathmore's ownership, the proceeds of the Building are not only an asserted part of the bankruptcy *res*, they are also in joint custody of Strathmore and SDF. *See Pryor*, 2014 WL 1355623, at *4 ("[A] bankruptcy court may enter an order affecting a non-debtor's interest in certain property if the court has personal jurisdiction over the non-debtor or in rem jurisdiction over the property."); *Geron v. Peebler (In re Pali Holdings)*, 488 B.R. 841, 851–52 (Bankr. S.D.N.Y. 2013) (bankruptcy court can enter final judgment when exercising "*in rem* jurisdiction over the bankruptcy *res*").  *Stern* does not bar this Court from "rul[ing] with respect to state law when determining a proof of claim in the bankruptcy, or when deciding a matter directly and conclusively related to the bankruptcy." *Salander O'Reilly Galleries*, 453 B.R. at 117.

Even if the *Stern* analysis applies to the instant proceedings, the claims before this Court fall within the exceptions in *Stern*.  First, cases involving "public rights" are an exception to the principle "that the Constitution generally reserves the power to adjudicate [ ] common law claims to courts established under Article III." *Inv. Sec. LLC v. Picard (In re Bernard L. Madoff)*, 740 F.3d 81, 94 (2d Cir. 2014).  "[T]he contours of this exception have not been precisely

[5] The district court concluded that permissive withdrawal of the reference was not warranted, however, and noted that the bankruptcy court's proposed findings of fact and conclusions of law would serve judicial economy.  In 2012, the Eastern District of New York amended its standing order of reference to include "that if a bankruptcy judge or district judge determines that a bankruptcy judge cannot enter a final order or judgment consistent with Article III of the United States Constitution in a particular proceeding referred under this order and designated as core . . . the bankruptcy judge shall hear the proceeding and submit proposed findings of fact and conclusions of law to the district court." E.D.N.Y. Admin. Order 601 (Dec. 6, 2012).  The amended order also provides "that the district court may treat any order or judgment of the bankruptcy court as proposed findings of fact and conclusions of law in the event that the district court concludes that a bankruptcy judge could not enter that order or judgment consistent with Article III of the United States Constitution." *Id.*  Thus, even if the district court determines that this Court does not have constitutional authority to enter a final judgment, it will treat this Court's ruling as proposed findings of fact and conclusion of law.

delineated." *Id.* at 94 n.13.  Broadly speaking, "what makes a right 'public' rather than private is that the right is integrally related to particular federal government action." *Stern*, 131 S. Ct. at 2613.  "[C]reditors' hierarchically ordered claims to a pro rata share of the bankruptcy res" are a matter of public right, created by Congress through the enactment of the Bankruptcy Code. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56 (1989).

Second, "[a] creditor may subject itself to the binding authority of the bankruptcy court by filing a proof of claim against the bankrupt estate." *Pryor*, 2014 WL 1355623, at *5.  Here, Liosis placed the Surrogate's Court matters squarely before this Court by filing a proof of claim in both bankruptcy cases.  The controversy will now be litigated in the context of the debtors' adversary proceedings and decided by this Court's rulings on Liosis' and SDF's claims.

This Court concludes that the consideration of the matters pending before the Surrogate's Court, which are necessary to adjudicate competing interests in alleged property of the bankruptcy estate, is a constitutional exercise of § 128(b)(1) jurisdiction.  Nothing in *Stern* limits this Court's authority to reach a final determination as to the Building and the validity, priority, and extent of claims asserted against it and the debtors.

     3.   Federal Probate Exception

Liosis also argues that the probate exception to federal jurisdiction bars this Court from hearing matters related to the Surrogate's Court proceedings and thereby interfering with the administration of Christos' and John's estates.

The federal probate exception provides that "a federal court has no jurisdiction to probate a will or administer an estate." *Markham v. Allen*, 326 U.S. 490, 494 (1946); *see also Marshall v. Marshall*, 547 U.S. 293, 310–12 (2006) (discussing *Markham*).  This circuit narrowly construes the doctrine "to apply '*only if* a [federal] plaintiff seeks' either 'to (1) administer an estate,

probate a will, or do any other purely probate matter,' or '(2) to reach a res in the custody of a state court.'" *Leskinen v. Halsey*, 571 F. App'x 36, 38 (2d Cir. 2014) (emphasis in original) (quoting *Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 106 (2d Cir. 2007)).  The probate exception does not "bar federal courts from adjudicating matters outsides those confines and otherwise within federal jurisdiction." *Marshall*, 547 U.S. at 312.  For example, in *Borko*, this Court construed a decedent's will to determine whether certain property was part of the debtor's bankruptcy estate. *Borko*, 2013 WL 5442264, at *6.  Federal courts may properly exercise jurisdiction over proceedings "intertwined with and binding on" state courts without contravening the probate exception. *Lefkowitz*, 528 F.3d at 106.

Here, Nikolaos' actions as administrator of Christos' estate are integral to this Court's determination of whether the Building is properly characterized as property of Strathmore's bankruptcy estate; the validity, priority, and extent of liens, claims, and encumbrances on the Building; and claims against the debtors.  Presently, counsels to Strathmore and SDF hold the proceeds from the sale of the Building in escrow; the funds are not in the custody or control of the Surrogate's Court.  Furthermore, Strathmore itself is not a party to the Surrogate's Court proceedings. Tr. 4:19–6:4, Dec. 16, 2013, ECF No. 109-3.  Thus, the federal probate exception does not limit this Court's ability to adjudicate claims against Strathmore and Nikolaos' bankruptcy estates.

B.  28 U.S.C. § 1334(c)

1.  Mandatory Abstention

A bankruptcy court must abstain from hearing "a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title

11." 28 U.S.C. § 1334(c)(2). Here, mandatory abstention does not apply because, "if an action is a core proceeding, then mandatory abstention is not required by § 1334(c)(2)." *Int'l Tobacco Partners, Inc. v. State of Ohio (In re Int'l Tobacco Partners, Ltd.)*, 462 B.R. 378, 390 (Bankr. E.D.N.Y. 2011); *see also Residential Funding Capital LLC v. UBS Real Estate Sec. Inc. (In re Residential Capital, LLC)*, 515 B.R. 52, 62 (Bankr. S.D.N.Y. 2014) ("[I]f the current proceeding qualifies as one of the core proceedings enumerated in section 157(b)(2), then it follows that the Court has subject matter jurisdiction over the action as one 'arising in' a bankruptcy case, and the Court need not determine whether the claims are 'related to' the bankruptcy proceeding.").

2.  Permissive Abstention

Alternatively, "in the interest of justice, or in the in the interest of comity with State courts or respect for State Law," a bankruptcy court may "abstain[ ] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). Permissive abstention lies "within the sound discretion of the bankruptcy court." *Abir v. Malky, Inc. (In re Abir)*, No. 09 CV 2871 (SJF), 2010 WL 1169929, at *7 (E.D.N.Y. Mar. 22, 2010).

In *Republic Reader's Serv., Inc. v. Maspazhe Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.)*, 81 B.R. 422 (Bankr. S.D. Tex. 1987), the court identified twelve factors to weigh in deciding whether to permissively abstain:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden on the court's docket, (10) the likelihood that

> the commencement of the proceeding in a bankruptcy court involves forum
> shopping by one of the parties, (11) the existence of a right to a jury trial, and (12)
> the presence in the proceeding of nondebtor parties.

*In re Republic Reader's Serv., Inc.*, 81 B.R. at 429. This analysis has since been widely adopted as the permissive abstention standard. *See, e.g.*, *Christensen v. Tuscon Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1167 (9th Cir. 1990); *In re Craft Architectural Metals Corp.*, 115 B.R. 423, 432 (E.D.N.Y. 1989). Courts need not address all twelve factors when determining whether to permissively abstain. *Lawski v. Frontier Ins. Grp. (In re Frontier Ins. Grp.), LLC*, 517 B.R. 496, 505 (Bankr. S.D.N.Y. 2014); *see also Wider v. Wider (In re Wider)*, No. 09-72993 (AST), 2009 WL 4345411, at *2 (Bankr. E.D.N.Y. Nov. 30, 2009) ("[B]ankruptcy courts have considered one or more—although not necessarily all—of twelve factors."). Because permissive abstention is an exception to a court's general obligation to exercise conferred jurisdiction, it should be granted sparingly. *In re Residential Capital, LLC*, 519 B.R. 890, 903 (Bankr. S.D.N.Y. 2014) (citing *Krischner v. Grant Thornton, LLP (In re REFCO, Inc. Sec. Litig.)*, 628 F. Supp. 2d 432, 446 (S.D.N.Y. 2008). "The movant bears the burden of establishing that permissive abstention is warranted." *In re Residential Capital*, LLC, 519 B.R. at 903.

After considering all of Liosis' arguments, this Court is unconvinced that it should abstain. Liosis accuses Nikolaos of exploiting John's inheritance and seeks a determination of the Building's ownership from the Surrogate's Court, because it is the forum that administers decedents' estates. However, the direct outcome of Liosis' success in the Surrogate's Court would be removal of assets from the Strathmore bankruptcy estate. The purpose "of extending bankruptcy jurisdiction to actions against certain third parties, as well as suits against debtors themselves, is to 'protect the assets of the estate' so as to ensure a fair distribution of those assets as a later point in time." *Quigley Co., Inc.*, 676 F.3d at 58 (quoting *Adams v. Zarnel (In re*

*Zarnel*), 619 F.3d 156, 171 (2d Cir. 2010)).  Likewise, this Court should not abstain from enforcing its Sale Order, the express terms of which contemplated that this Court would adjudicate interests in the proceeds after the sale. *See Millennium Seacarriers, Inc.*, 419 F.3d at 97 ("Bankruptcy courts retain jurisdiction to enforce and interpret their own orders.").  In addition to SDF and Liosis, Strathmore and Nikolaos have numerous other creditors, who are not represented in Surrogate's Court.  If this Court abstains, the interests of those parties, which must be considered, would not be taken into account.  Furthermore, state law issues do not predominate over bankruptcy issues simply because the adjudication of SDF and Liosis' claims under bankruptcy law requires this Court to look to pertinent provisions of state law, including the New York Property Law and Estates, Powers, and Trust Law. *See Salander O'Reilly Galleries*, 453 B.R. at 123 ("Bankruptcy courts may apply state law as a part of resolution of core proceedings.").

Finally, abstention would not serve judicial economy.  Both the Surrogate's Court and this Court can examine state law issues surrounding the transfer of the Building.  The Surrogate's Court cannot, however, make a determination as to the validity, priority, and extent of liens or the allowance of claims. *See Residential Capital*, *LLC*, 519 B.R. at 903 (permissive abstention unwarranted where it would have the effect of delaying the claims objection process).  Likewise, if the Surrogate's Court ruled in Liosis' favor, it could not directly order the turnover of the proceeds of the Building to her.  Instead, Liosis would have to return to obtain a further order of this Court.  Thus, the relevant factors weigh against permissive abstention.

Conclusion

For all of the foregoing reasons, the Motion for Abstention is denied.  A separate order will issue.



**Dated: December 31, 2014**
**Brooklyn, New York**

**Nancy Hershey Lord**
**United States Bankruptcy Judge**

16